WEBB v. BELL et al.

(Supreme Court, Appellate Division, Third Department.   November 10, 1897.)

1. TOWNS—DEBT BARRED BY LIMITATIONS—WAIVER.
   Assuming that a town board can waive the bar of limitations on a debt against the town, it must clearly appear that the claim is just.

2. SAME.
   A town is not equitably liable for moneys advanced to the overseer of the poor, where there is nothing showing the state of account between the overseer and the town, though he testify the money was expended in the poor fund.

3. SAME—ALLOWANCE OF CLAIM—COMPROMISE.
   While mandamus proceedings to compel the auditing of a claim for money supplied to a town overseer of the poor and a suit against such overseer personally for the same money were both pending, three out of six members of the town board allowed the claim on the condition that both suits be dismissed. One of the three was claimant's attorney in the mandamus proceedings, and another was the overseer. *Held*, the allowance was an attempt to audit the claim, and is not binding on the town as a compromise.

Appeal from special term, Schuyler county.

Suit by Lee B. Webb against Robert Bell and others to restrain the payment of certain moneys. From judgment in favor of plaintiff, defendants appeal. Affirmed.

By the judgment appealed from, the defendant Tucker, as supervisor, etc., and his successors in office, were restrained from paying over any moneys or delivering any order to the defendant Bell upon a claim alleged to have been audited to Bell by the board of town auditors of the town of Orange on or about November 6, 1896, for the sum of $285.15.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

O. P. Hurd, for appellants.
Owen Cassidy and Charles M. Woodward, for respondent.

MERWIN, J.   The claim in controversy has its origin in two notes, of $100 each, made by George Kels, as supervisor of the town of Orange, payable to Robert Bell, or bearer; one dated February 12, 1886, and the other April 17, 1886, and each payable the 1st day of January following.   The first one contains the statement "Being for money loaned of him as per resolution of the board of town auditors of said town passed February 2, 1886," and the other contains the statement, "The money being loaned to pay an indebtedness of the town for the year 1885 for support of poor."   It appears that on February 2, 1886, the town board adopted the following resolution:

"Resolved, that the supervisors of the town of Orange be authorized and empowered to loan the sum of $100 upon the credit of said town, to pay the indebtedness of the said town to be used as a fund for the payment of poor orders of said town over and above the sum appropriated for the same at the rate of six per cent. per annum."

No resolution of the board is shown as to the second loan.   The amount of these notes was advanced by Mr. Bell to Mr. Kels at about their respective dates.   The latter testifies that he thinks he paid

the moneys over to Mr. Hungerford, the poor master, soon after he received it. Mr. Hungerford, the poor master for 1886, testifies that he received $200 of Mr. Kels, all at one time; that in his settlement with the town board that year there is no account of any money received from the supervisor, and that he thinks he received the $200 in February, 1887. He testifies generally that he spent the money for the support of the poor of the town. It does not appear how his accounts stood on his settlement with the board. Mr. Kels, in 1890, after he ceased to be supervisor, paid on these notes the sum of $42.55 from his own funds, without any authority from the town board. In 1894, Mr. Webb, the present plaintiff, was supervisor, and at the meeting of the board of town auditors in November, 1894, the claim of Mr. Bell upon these notes was presented. Instead of auditing it, they made an order in the following form: "There is due Lee B. Webb on settlement of his accounts against the town of Orange, $263.45, from said town. The supervisor will pay him or bearer that amount when in funds." This is dated November 8, 1894, and the amount represents the claim of Bell, and, as far as there was any audit, that was intended to refer to the claim of Bell. On November 17, 1894, the board of auditors met, and passed a resolution rescinding this order. Thereafter, in May, 1895, Mr. Bell applied to the supreme court for a writ of mandamus against Webb as supervisor to compel him to present the claim of Bell to the board of supervisors at its next meeting, and cause the amount of the audit to be included in the amount to be raised and collected by tax upon the property of the town. The court, at special term, after hearing both parties, denied the application. Mr. Bell appealed, and thereafter the order of the special term was affirmed by this court. 4 App. Div. 614, 36 N. Y. Supp. 1122. It was there said that, apart from the alleged audit, the claim was unauthorized in its origin, was barred by the statute of limitations, and was not above suspicion as to its merits, and that the rescission of the audit to Webb was effectual. Mr. Bell appealed to the court of appeals, and this appeal was pending in the fall of 1896. At the annual meeting of the town board in November, 1896, Mr. Bell presented a claim for $380.28, consisting of $280.28, stated to be the amount of the two notes, and $100 as counsel fees on mandamus proceedings. This was allowed at $285.15, which was evidently intended to be the amount of the notes. The order given to Mr. Bell is signed by only three of the six members of the board. Those signing are Mr. Tucker, the supervisor, Mr. Kels, a justice of the peace,—the same man who gave the notes as supervisor,—and Mr. Barkman, a justice of the peace, who was at the time the attorney for Mr. Bell in the mandamus suit. The abstract or certificate of all the accounts audited, including this one, made up for presentment to the board of supervisors, was signed by all the members of the board. It was verbally stated on behalf of Mr. Bell at the time of the presentment of his claim that, if the board allowed it, it would be a final settlement of the matter, and the appeal would be withdrawn. Some time before this, Mr. Bell had brought a suit against Mr. Kels individually for the amount of the notes. This suit was discontinued, Mr. Kels thinks, shortly after the meeting of the auditing board, and Mr. Webb thinks shortly before. The delivery

and payment of the order for $285.15 was sought to be restrained in this action, and the court, in granting that relief, stated that the grounds of the decision were "that the said claim at the time of its pretended audit was barred by the statute of limitations; that the town had no authority to loan the moneys claimed to have been loaned; that the pretended audit was illegal, in that it was made by the votes of two men who were financially interested in the payment of the claim, and who, therefore, were unauthorized to vote thereon." The defendant, in order to maintain the validity of his claim under the audit of 1896, argues that the town equitably owed the debt, that the board had the right to waive the statute of limitations, that the allowance in 1896 was in the nature of a compromise within the power of the board, and therefore the order valid. It is not shown that the town equitably owed the debt. True, the overseer of the poor testifies generally that he paid out the money for the support of the poor; but the state of his account with the town does not appear. It was the duty of the overseer of the poor to lay his account and vouchers before the board of town auditors, and they were required to audit and settle the same, and state the balance due from or to the overseer. 3 Rev. St. (8th Ed.) § 52; chapter 334, § 4, Laws 1845; chapter 420, § 2, Laws 1890. This was not done, and it cannot, therefore, be determined how much, if anything, was due from the town to the overseer for moneys he had properly paid out for the support of the poor. That being so, the amount of the appellants' equitable claim cannot be determined, as at most it would not exceed the amount that would have been due to the overseer on a settlement of his accounts. Assuming the existence of an equitable claim, I doubt very much the right of the town board to waive any bar of the statute that might exist. In Woods v. Supervisors, 136 N. Y. 403, 32 N. E. 1011, it was held that the board of supervisors had the power to waive, by proper agreement, the defense of the statute as to claims not already barred. That is not this case. If, however, the power exists, and is to be exercised, it should be made by the claimant to clearly appear, more than it does in the present case, that a just debt exists.

Does the element of compromise change the situation? The manner in which the audit was brought about does not commend it, but, on the contrary, points towards collusion. The mandamus proceeding was not against the town, and we are not referred to any statute that gave the town board any control over it. The town had an interest in it, and the electors, at their annual town meeting, might, perhaps, have taken some action about it under subsection 3 of section 24 of the town law as it stood at that time. I fail to see how the board had any right to make any agreement of compromise. Their action was, in effect, an effort to audit the original claim. It is hardly claimed that the loan was authorized by any one who had authority to bind the town. The claim, as audited, was for the balance unpaid on the notes, after applying the payment made by Mr. Kels. That payment did not affect the town. The notes being shown to be invalid as against the town, a case of illegality was made out that justified, prima facie, the relief given, and the burden was on the claimant to justify in law or

equity the action of the board. This, I think, he failed to do. The judgment should be affirmed.

Judgment affirmed, with costs. All concur.